# N. Y. COMMON PLEAS.

## SOLOMON agt. THE CONGREGATION B'NAI JESHURUN.

*Powers of trustees of a religious corporation to manage the temporal affairs of the church.*

Where an injunction is asked by a member of a religious society to restrain the society from removing and changing the pews of the church, &c., in alleged violation of the rights and franchises of a pew owner, and also as contrary to the customs, usages and doctrine of the church, it will be denied:

1st. Where it appears that the meeting of the society, which was claimed to be irregular, was regularly held, and the proceedings were subsequently ratified by the board of trustees and a large number of the electors:

2d. Where all the equities are denied by the answer; and,

3d. On the ground that the statute expressly gives the trustees power to make rules and orders for managing the temporal affairs of the church and to regulate and order the renting of pews, &c.

*Special Term, July,* 1875.

A MOTION for an injunction was argued in this court against the Congregation B'nai Jeshurun. The injunction was urged upon the application of Mr. Solomon, one of the members of the congregation, who sought to restrain the society from removing and changing the pews of the synagogue in violation, as he claimed, of his rights and franchises as a pew owner, and also on the further ground that the contemplated changes were contrary to the customs, usages and doctrines of the Jewish people.

LARREMORE, *J.* — The plaintiff, a member of the religious incorporation B'nai Jeshurun, seeks to enjoin the trustees thereof from making certain proposed alterations in the synagogue or church edifice belonging to said corporation.

Such alterations, it is claimed, will not only affect his temporal rights as a pew owner, but are also intended to change and subvert the established rules and spiritual usages of said incorporation by permitting the promiscuous assembling of the sexes during divine worship. This religious society was incorporated in 1825, pursuant to the act of April 5th, 1813, and its mode of worship has been in accordance with the rites and customs and usages of.the Polish and German Jews. In the synagogue in Thirty-fourth street, which the members of said society now own and occupy, the separation of the sexes during divine worship has heretofore been observed, the males occupying the ground floor and the females occupying the gallery of such edifice. Among the proposed alterations is the construction of pews in which members of the same family may sit together; the plaintiff insists is immodest, unchaste, unlawful, contrary to the discipline and rules of said congregation, and in violation of his rights as a pew owner. It does not appear that the property now held by said society was acquired by it subject to any condition as to the mode of worship to be adopted or continued, nor is there any thing to that effect in the certificates of sale of the pews purchased by the plaintiff. He thereby acquired an easement in the pews in question, and the right to the exclusive occupation thereof subject to such rules and regulations as said society might impose. That said society possessed the right to make changes in its mode of worship is shown by the fact that heretofore alterations have been made in its ritual by the omission of some prayers and the transposition of others. If the separation of the sexes during divine worship be a cardinal principle of the faith professed by this society then a goodly portion of its membership have sanctioned a grievous error. But such a, conclusion is not possible in view of the opposing affidavits by which it appears that the question of faith involved is at least one of doubt. I leave it therefore, where it properly belongs, to the judicature of the church. Nor can I hold in

Solomon agt. Congregation B'nai Jeshurun.

full face of the papers submitted, that the meeting held by said society May 16th, 1875 (at which the proposed alterations were adopted), was irregularly convened, or the action there taken unlawful. In this particular the weight of evidence is with the defendants, showing not only that all qualified electors were duly notified of the time, place and object of said meeting, and the minutes of its proceedings, but also the subsequent ratification thereof by the board of trustees of said society and by a large number of such electors. On this ground interference by injunction would be improper and unauthorized. Plaintiff's equities are denied by the answer which avers that the alterations contemplated are for the benefit and convenience of said society and for the increase of its revenue. Plaintiff has not sustained any pecuniary loss or damage by reason of the action of said society. If such hereafter should prove to be the case his remedy at law is ample. This much for the questions raised on the argument. Independent of the equitable defenses which preclude a permanent injunction in this case, there is a statutory reason to aid us. By section 4 of the act of April 5, 1875, the trustees of every church congregation or society are authorized and empowered, among other things, to take into their possession and custody all the temporalities belonging thereto, whether the same consist of real or personal estate, to hold and enjoy all churches, meeting houses, &c., and also to repair and alter the same, and erect others if necessary. Said trustees shall also have power to make rules and orders for managing the temporal affairs of such church, and to regulate and order the renting of pews therein (3 *R. S.*, *Edmonds' edition*, 687). The trustees of the Society B'nai Jeshurun had a legal right to make the alterations in question without any action on the part of said society; but such action having been taken in the first instance and subsequently ratified by said trustees, is binding and conclusive upon the plaintiff and all the members of said society. The motion for a permanent injunction must, therefore, be denied.